# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff/Respondent*, | ) |
| | ) |
| v. | ) Case No. CIV-10-374-JHP |
| | ) |
| JANICE LYNN RATLIFF, | ) |
| | ) |
| *Defendant/ Movant.* | ) |

## ORDER

Defendant Janice Lynn Ratliff ("Defendant") has filed a *pro se* motion under 28 U.S.C. §2255 seeking discovery, an evidentiary hearing, vacation of her current sentence, and resentencing. The United States, by and through Assistant United States Attorney Linda A. Epperley, has filed a response in objection. After a full review of the file and pleadings in this case, including Defendant's complaints of ineffective assistance of counsel, the Court finds and concludes that Defendant's motion should be denied in its entirety without the necessity of a hearing.

On May 27, 2008, in case no. CR-08-35-JHP, Defendant was charged with a single count of Bank Fraud, in violation of 18 U.S.C. §1344. (*Complaint*, Doc. #1)[1]. Defendant entered a plea of guilty on June 13, 2008. (*Minutes of Plea Hearing*, Doc. #17; *Transcript of Plea Hearing*, Doc. #29). No written or oral plea agreement exists. A sentencing hearing was initially held on February 12, 2009. (*Minutes of Sentencing Proceeding*, Doc. #27). However, after the testimony of the victim, Mr. Wynn, the hearing was continued so that this Court could read deposition transcripts from a related civil case while taking the evidence and argument

---

[1]Documents from the criminal case are referred to by title and docket number.

presented thus far under advisement. (*Transcript, February 12, 2009 Sentencing*, at 88). Sentencing resumed on April 2, 2009, and Defendant was sentenced to imprisonment in the custody of the Bureau of Prisons for 60 months, followed by 36 months of supervised release, a $100.00 special assessment, and $484,03.62 in restitution. (*Minutes of Sentencing Hearing*, Doc. #34; *Judgment and Commitment*, Doc. #36). The Judgment and Commitment was filed on April 10, 2009. (*Judgment and Commitment*, Doc. #34).

On April 10, 2009, Defendant filed her notice of appeal to the Tenth Circuit. (*Notice of Appeal*, Doc. # 37). The Tenth Circuit affirmed Defendant's conviction and sentence on April 26, 2010. **United States v. Ratliff**, 376 Fed. Appx. 830 (10th Cir. 2010). Defendant petitioned the Supreme Court for *certiorari* on April 30, 2010, and the Court denied her petition on June 7, 2010. **Ratliff v. United States**, 130 S. Ct. 3403 (2010). Defendant filed her Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 on October 8, 2010. (*Motion*, Doc. # 55; Dkt. #1). Defendant also filed a memorandum in support of her motion on October 12, 2010. (Dkt. #4).

Defendant asserts that her Sixth Amendment right to counsel was violated and that she received ineffective assistance of counsel. She claims that her defense attorney's performance "fell below an objective standard of reasonableness during the pretrial, plea, sentencing and direct appeal process;" that she was prejudiced during sentencing "when counsel raised frivolous objections and made false statements of fact with respect to [her] relevant conduct and offense level;" and that she was prejudiced "by the cumulative impact of multiple deficiencies or errors by counsel during the pretrial, plea, sentencing and direct appeal process." (*Brief*, Dkt. #4, at ii).

In support of these assertions, Defendant argues that in filing objections to the PSR and at

sentencing, her attorney failed to "cite any court decisions where other defendants in Ms. Ratliff's situation, or analogous situations, had avoided the enhancements or the enhancements had been found inapplicable. . . . [C]ounsel did not research the law and he admitted this at sentencing" and that the lawyer "misstated the facts as to the Oklahoma state proceedings wherein Ms. Ratliff had been awarded back pay by the state labor department." (*Brief*, Dkt. #4, at 11).

As an initial matter, this Court holds, under the provisions of 28 U.S.C. §2255(b), that no hearing is needed because the motion, files and record in this case "conclusively show that the prisoner is entitled to no relief. . . .". See also, *United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988). Here, the proceedings before this Court and the documents filed in the case clearly establish that Defendant was satisfied with the services of her counsel until the defense strategy failed to yield the results she desired. Defendant's allegations against her attorney are unsupported by the record; her credibility, given her affirmed conduct, is questionable at best; and are not supported by this Court's recollection of defense counsel's performance.

Proceeding on the record and pleadings, this Court notes Defendant's claims that her lawyer's performance "fell below an objective standard of reasonableness during the pretrial, plea, sentencing and direct appeal process;" that she was prejudiced during sentencing "when counsel raised frivolous objections and made false statements of fact with respect to [her] relevant conduct and offense level;" and that she was prejudiced "by the cumulative impact of multiple deficiencies or errors by counsel during the pretrial, plea, sentencing and direct appeal process." (*Brief*, Dkt. #4, at ii). Specifically, Defendant argues that in filing objections to the PreSentence Report ("PSR") and at sentencing, her attorney failed to "cite any court decisions where other defendants in Ms. Ratliff's situation, or analogous situations, had avoided the

enhancements or the enhancements had been found inapplicable. . . . [C]ounsel did not research the law and he admitted this at sentencing." (*Brief*, Dkt. #4, at 11).  Defendant also alleges that Fleak "misstated the facts as to the Oklahoma state proceedings wherein Ms. Ratliff had been awarded back pay by the state labor department." (*Brief*, Dkt. #4, at 11).

In evaluating these claims, this Court is guided by the familiar holding of ***Strickland v. Washington***, 466 U.S. 668, 687-688 (1984):

> To prevail on a claim of ineffective assistance of counsel,
>
> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defendant. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or [] sentence resulted from a breakdown in the adversarial process that renders the result unreliable.

Evaluation of an ineffective assistance claim is a fact-intensive inquiry, requiring a court to determine "whether counsel's assistance was reasonable considering *all the circumstances*." ***Id.***, at 688 (emphasis added). As the Supreme Court explained in ***Strickland***, "representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." ***Id.***, at 693. Great deference is granted to defense counsel's reasoned choice of action:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance: that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.*, at 689 (internal citations omitted).  See also **Boyd v. Ward**, 179 F.3d 904, 915 (10th Cir. 1999)("[T]hose accused of crimes, even capital crimes, are entitled only to a reasonable and adequate defense, not the defense which, in hindsight, they believe would have been best.")

Defendant also bears a heavy burden of proving that the claimed errors actually had an adverse effect on her defense. Given "the presumption that a criminal judgment is final is at its strongest in collateral attacks on the judgment," Defendant must show more than "that the errors had some conceivable effect on the outcome of the proceedings [as] [v]irtually every act or omission would meet that test." **Strickland**, 466 U.S. at 693, 697. Defendant is required to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 694.

Turning to the merits of her claim, a review of the record clearly establishes that Defendant was satisfied with her attorney's approach at sentencing and on appeal until the strategy failed to succeed. Only then did Defendant claim that her denials of relevant conduct, clearly established by the record herein, were being advanced by her attorney against her will.

On June 13, 2008 when Defendant entered her guilty plea, the Magistrate asked Defendant whether she was satisfied with the services of her attorney and whether she believed he had done all that anyone could do to assist her. Defendant responded in the affirmative. (*Transcript, Plea Hearing*, at 17). Defendant was also given an opportunity to address the Court following the sentencing hearing. This Court set forth a detailed explanation for its denial of Defendant's objections to the Presentence Report.

> Counsel for the government now argues that the Defendant falsely denies or is frivolously contesting relevant conduct and has therefore acted in a manner inconsistent with an acceptance of responsibility. Mr. Horn states that pleadings

> filed by Defendant's counsel falsely denies the extent of the embezzlement and attempts to place blame on the victim. . . .
>
> The Court makes the following findings: The Defendant in this case waived her right to have this matter presented to a grand jury and entered a plea of Guilty to an Information. At her plea hearing she provided the Court with a factual basis for her plea of Guilty. Early on in the proceedings, the Government agreed that the Defendant had timely accepted responsibility of her actions as evidenced by the Motion for Third Point filed August 8th, 2008. Now, due to Defendant's contesting the amount of loss and other guideline applications, the Government asserts no adjustment is warranted.
>
> Based upon the evidence and the pleadings presented before the Court, the Court hereby finds by a preponderance of the evidence that the Defendant's actions are inconsistent with an affirmative acceptance of responsibility. Not only does the Defendant maintain that she only committed fraud based on ten checks, she now implies that her employer was somehow involved in her fraudulent activities. Since the Defendant has falsely denied or frivolously contested relevant conduct found by this Court, she should not receive points for acceptance of responsibility.

(*Transcript, April 2, 2009 Sentencing*, at 66-67).

Immediately following that ruling, the Court asked Defendant to come forward and provided her an opportunity to make any remarks, but Defendant declined. (Id., at 67-68). By this point, Defendant was well aware that the Court was unpersuaded by the defense's presentation and that she was unlikely to receive a lenient sentence. If her attorney's arguments were based on anything other than the information Defendant had provided him, Defendant failed to bring her complaints to the Court's attention as any truly aggrieved and misled client would when given an opportunity to address the Court independently.

Defendant now argues that her attorney made frivolous objections and that he "could have but did not waive objection to the sophisticated means enhancement, the abuse of trust enhancement and the total relevant conduct." (*Motion*, Dkt. #1, at 10). She raised these same issues unsuccessfully on direct appeal. Had the Tenth Circuit ruled favorably, there is little doubt that Defendant would not be questioning her lawyer's strategy. Defendant admits in her

own brief that she "did not know the law. . . did not and could not determine trial strategy. . . simply hired and asked counsel to do the best he could and trusted and relied on counsel's advice and judgment. She certainly tried to impress on counsel that she didn't want him to do anything that would cause her to get an increased sentence." (*Motion*, Dkt. #1, at 12).

Her lawyer's decisions regarding which objections and arguments to make were plainly strategies based on information provided to him by Defendant. The attorney pursued the arguments that he, using his education and experience, thought most likely to secure a lesser sentence for Defendant. Now that those arguments have proven to be unsuccessful, Defendant challenges her lawyer's representation. It is for this very reason that *Strickland* cautioned:

> the availability of post-trial inquiry into attorney performance . . . would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. . . . Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.

*Strickland*, 466 U.S. at 690.

As the Supreme Court recognized in *Strickland*, "the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's action are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." 466 U.S. at 691. The record confirms that in fashioning his arguments, the lawyer was relying on information given to him by Defendant and that she had told her attorney all the facts about the charge. (*Transcript, Plea Hearing*, at 12).

Additionally, throughout the Court proceedings, defense counsel repeatedly informed the Court that he was relying on information provided to him by his client:

> "All we have done is what Ms. Ratliff has told us. She says she didn't embezzle anything but the ten checks. I wasn't there. I don't know what really happened. We are just trying to present her case the best we can. We are not trying to lead anybody." (*Transcript, April 2, 2009 Sentencing*, at 6). (In response to prosecutor's concerns about factual misrepresentations).
>
> "That's what she tells me. That has to be our position. . . . That's what I'm told. And also, the other people, the other two ladies that also signed these checks, that their names are on that document, they did the same thing, from what I understand." (*Transcript, April 2, 2009 Sentencing*, at 55). (In response to Court's question if Ratliff took the money back to Wynn after she cashed the checks).
>
> "She was in a situation where she got tempted and she did take somebody's money. She said she shouldn't have and she admitted it right away. But it has been-it's been expanded into something bigger than it was. So that's what she tells me and that's what our argument is." (*Transcript, April 2, 2009 Sentencing*, at 58).

These representations were made in open court in front of Defendant. Yet again, Defendant did not object or complain or attempt to set the record straight when granted an opportunity to do so by this Court.

Contrary to Defendant's allegation that counsel "abdicat[ed] the duty and responsibility to advocate Ms. Ratliff's case and cause during the sentencing process," (*Brief*, Dkt. #4, at 12), this Court finds no reason to doubt that counsel reasonably investigated the law and facts in preparation for his representation of Defendant. With respect to the enhancements for position of trust and sophisticated means, Defendant claims that her attorney did not "did not research the law and he admitted this at sentencing." (*Brief*, Dkt. #4, at 11). Defendant misstates the transcript. Counsel did **not** admit he had not researched the law. In response to the prosecution's concern that defense counsel has misrepresented case law, defense counsel responded:

> The Brown case is cited January 30th of '09 [less than a month before the initial February 12, 2009 sentencing hearing]. I did have some language on Pages 2 and 3 that supports our position. If we are wrong on that case, we certainly didn't

>intend to mislead anyone. . . I was just citing the Brown case, Your Honor. . . I didn't read anything but this case that came out on January 30th, right after it had came out, which seemed to be favorable to us.

(*Transcript, April 2, 2009 Sentencing*, at 6-7). In addition, defense counsel directed the Court to *United States v. Jones*, 530 F.3d 1292 (10th Cir. 2008) regarding the requirements for imposing a sophisticated means enhancement..

Defendant also alleges that her lawyer "misstated the facts as to the Oklahoma state proceedings wherein Ms. Ratliff had been awarded back pay by the state labor department." (*Brief*, Dkt. #4, at 11). When the Court questioned defense counsel about his contention that Defendant was not in a supervisory position, counsel explained that "it seemed there was some language in there that supported us, that there was some good and some bad in those transcripts, but it was our opinion that overall they were supportive." (*Transcript, April 2, 2009 Sentencing*, at 7). Rachel Sennett's deposition testimony revealed that Defendant was not in charge of scheduling breaks or lunches for other employees (*Deposition Sennett*, at 19); that other employees were unaware whether Defendant had authority to place orders without getting approval from Mr. or Mrs. Wynn (*Id.*, at 25); that Sennett could not recall if Defendant ever counseled other employees about work-related problems (*Id.*, at 26); that Sennett never saw Defendant send employees home if work was slow (*Id.*); and that Defendant never interviewed anyone on her own (*Id.*). Kelly Franklin testified that Defendant did not have the authority to give raises (*Deposition Franklin*, at 24); that Franklin did not know if Defendant held the title of office manager (*Id.*, at 27); that she did not know whether Defendant had authority to place orders without approval from the Wynns (*Id.*); and that when Mr. Wynn was gone, he would call Defendant and tell her what needed to happen with respect to the oilfield employees (*Id.*, at 32). While this Court remains convinced that Defendant operated in a supervisory position,

Defendant is simply wrong in claiming that defense counsel misled the Court or failed to present available proof to the Court.

Defendant concludes by alleging that her lawyer failed "to investigate the law and facts material to her in the pretrial, plea, sentencing and direct appeal process." (*Brief*, Dkt. #4, at 12). This is clearly not the case when so much of defense counsel's argument focused on civil cases and labor disputes - matters in which the lawyer did not represent Defendant. He could not have mounted the defense which was presented without an investigation of the material facts in this proceeding and other cases arising from Defendant's criminal conduct.

Even if this Court were to hold that defense counsel's performance fell short of the standards of reasonable representation, Defendant has utterly failed to show that the outcome would have been any different, as required under the second prong of *Strickland*, particularly in light of the strong record establishing a Defendant's total lack of acceptance of responsibility. Even a "professionally unreasonable [error by counsel] does not warrant setting aside the judgment of a criminal proceeding, if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Here, arguments of her lawyer aside, there was substantial evidence that Defendant failed to accept responsibility for her actions. Special Agent James Dawson of the FBI testified that his investigation uncovered three separate banks utilized in Defendant's fraudulent activity: the Bank, N.A. located in McAlester, Oklahoma; the Wilburton State Bank located in Wilburton, Oklahoma; and the Latimer State Bank, also located in Wilburton, Oklahoma. (*Transcript, April 2, 2009 Sentencing*, at 10). While Defendant only admitted only the activity at the Bank, N.A., Agent Dawson testified that the fraud at all three banks was committed using "a common scheme and plan. . . over a common period of time" and that Defendant used the proceeds from the

fraudulent activity at each bank in a similar manner. (*Id.*, at 26, 39).

Defendant's former employer, James Wynn, also testified in great length about how Defendant "took advantage of [Wynn's wife Dinah's] illnesses and her absence from [their] business" and "she did it over years and with thought-out devious means to hide it." (*Transcript, February 12, 2009 Sentencing*, at 19, 41). When Mr. Wynn confronted Defendant about the embezzlement and the fraud, Defendant responded, "I'll quit and you can have me arrested." (*Transcript, February 12, 2009 Sentencing*, at 41). Defendant never apologized to the Wynns or demonstrated any remorse for her actions. Rather, she embarked on a series of schemes to further harm her former friends. Such conduct is not demonstrative of acceptance.

Mr. Wynn testified that following her separation from employment, Defendant, who was responsible for transmitting the payroll, filed a labor action against the Wynns alleging that they failed to pay her overtime and vacation time. (*Transcript, February 12, 2009 Sentencing*, at 24-26). Additionally, Defendant filed bankruptcy in an attempt to avoid having to repay the embezzled funds and to avoid judgments against her in civil suits arising out of her fraudulent activities. (*Transcript, February 12, 2009 Sentencing*, at 27-37). As part of the bankruptcy proceeding, Judge Cornish issued an order dated March 7, 2008 finding that Defendant had embezzled $484, 023.62. (*Transcript, February 12, 2009 Sentencing*, at 27, 29, 32, 37). The information before the Court was wholly insufficient to establish acceptance of responsibility, regardless of the arguments and objections at sentencing. Accordingly, it was irrelevant whether defense counsel or Defendant was the driving force behind the argument presented to the Court. This Circuit recognizes that the "sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." **United States v. Quarrell**, 301 F.3d 664, 682 (10th Cir. 2002)(quoting U.S.S.G. §3E1.1, cmt. N. 5 (2001)).

Finally, the substance of Defendant's complaints here have already been presented to and rejected on appeal. The established rule in this Circuit holds that:

> where an appeal is taken from the sentence imposed and/or a conviction, the judgment of the reviewing court is *res judicata* as to all issues actually raised, and those issues that could have been presented, but were not presented, are deemed waived. Where a defendant's claim has not been raised at trial or on direct appeal, such a default prevents the defendant from raising the claim in a second appeal or in a collateral proceeding.

*Robertson v. Roberts*, 2010 WL 2760591 *6 (10th Cir. July 14, 2010)(slip opinion). See also, *United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993)(Section 2255 motion not available to address matters which should have been raised on direct appeal). Further more, there can be no miscarriage of justice in this instance, as this Circuit holds that "a 'fundamental miscarriage of justice' in this context, however, means only that the petitioner is actually innocent of the offense." *United States v. Richards*, 5 F.3d 1369, 1371 (10th Cir. 1993). At the change of plea hearing, Defendant admitted that she "opened a bank account under Wynn's Electronics that had my name and my social security number at McAlester, Oklahoma, The Bank, N.A." withe the intent "to defraud . . . [her] employer of money by depositing his checks in that checking account." (*Transcript, Plea Hearing*, at 18). Defendant further admitted that she "intended to execute a scheme that defrauded the bank" and that she "intended to obtain money by false or fraudulent pretenses." (*Id.*, at 19). Defendant also agreed with the prosecutor when he stated that she "represented to the bank that the interest in a particular business that the Wynns owned was being sold to Ms. Ratliff, at which point in time there was a document prepared at which she forged the signature of Ms. Wynn in order to establish that relationship, which in turn not only defrauds the Wynns, but it defrauds the bank because it's a false misrepresentation to the bank." (*Id.*, at 19-20).

As the Tenth Circuit recognizes, a defendant who is "simply expressing [her] subsequent

misgivings about [her] guilty plea" does not claim error which rises to the level of a miscarriage of justice. *United States v. Ferguson*, 360 Fed. Appx. 969, 974 (10th Cir. 2010(enforcing appellate waiver against defendant who appealed the denial of his motion to withdraw guilty plea).

In summary, this Court concludes that no hearing is necessary to hold that defense counsel was not ineffective, that Defendant has utterly failed to demonstrate any prejudice even if her attorney had been ineffective and that the substance of her complaints were previously rejected by the Tenth Circuit on direct appeal.

Accordingly, Defendant's motion for relief is denied.

**IT IS SO ORDERED this 25th day of February, 2011.**

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma